DALE A. THEOBALD, APPELLANT, v. ELOISE A. AGEE, EXECUTRIX OF THE ESTATE OF RICHARD H. ROGERS, DECEASED, ET AL., APPELLEES.

276 N. W. 2d 191

Filed March 13, 1979. No. 41738.

Barney & Carter, P.C., for appellant.

Woods, Aitken, Smith, Greer, Overcash & Spangler, for appellees.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

Plaintiff below, Dale A. Theobald, appeals to this court from the order entered by the District Court for Lancaster County, dismissing an action brought by him against the Executrix of the Estate of Richard H. Rogers, deceased, and his heirs and devisees, seeking specific performance of an alleged oral con-

tract for the devise of an interest in a farm located near Minden, Nebraska.

In his amended petition, Theobald alleges the deceased, Richard H. Rogers, was the president and chief operating officer of O'Shea-Rogers Tractor and Equipment Company, a Nebraska corporation, hereinafter referred to as the "Company," which was engaged in the wholesale distribution of farm equipment manufactured and distributed by Ford Motor Company. Rogers and his immediate family owned 50 percent of the common stock of the Company. Theobald was an employee of the Company from 1947 until February 1964, when the Company was sold to the Ford Motor Company. The alleged oral contract involved in this litigation arose out of a conversation which occurred in mid-December 1958, between Rogers and the plaintiff, who at that time was the Company's sales manager, and one Edwin Mangold, who at the time was distribution manager for the Company. The general manager of the Company was one LaVern Augustin, who had informed Rogers that he was resigning from the Company. Theobald testified, as to the conversation that Rogers had with him and Mangold at that time, as follows: "Q- And will you relate to the Court, as best you can, what each party said during the course of this conversation? A- This was immediately after I had learned that Mr. Augustin was leaving, and Mr. Rogers called Mr. Mangold and me into his office and closed the door. And he said, 'I have something I want to tell you fellows.' He said, 'I really hadn't intended to tell you now, at this time, but, goddamn it,' he said, 'Augustin has forced my hand.' And he said, 'I think you fellows have done a good job; it's a tough job; you've worked hard for me and I wanted to show my appreciation. And I just want you to know that I've made provisions for you fellows in my will so that you'll have an interest in a farm and a pretty damned good farm out at Minden. * * *'

"Mr. Mangold and I, both, expressed surprise and also appreciation. And he then went on to elaborate on why he was doing this. Q- What did he say in that regard? A- He said, 'This is a tough job and you fellows, I think, have done a good job for me, and I want to take care of you in some way, and so I've made a provision for you, providing you don't pull out on me like Augustin. Now, I had Augustin provided for, too, in this program, but since he is leaving,' he said, 'I'm not going to go ahead with the provision for him. * * *'

"As we left his office I recall that we again expressed our appreciation for his thoughtfulness and his consideration."

Mangold also testified with reference to the conversation, and his testimony was substantially similar to that of Theobald. He also testified that sometime in August 1959, Rogers showed him a paragraph in his will which left a one-third interest in a certain farm, legally described in the will, to him, Theobald, and another employee. Augustin also testified that when he resigned, Rogers tried to persuade him to stay on by promising him a farm, stating that Theobald and Mangold "were receiving a farm between them." There was also testimony from one Eugene Sparrows, a representative of the Ford Motor Company, who testified that Rogers had informed him that in his will he was leaving an interest in a farm near Minden, Nebraska, to the men who had helped him accumulate his wealth.

Richard Rogers died testate on December 27, 1975. His will and codicil, executed in 1973, and admitted to probate, made no provision for either Theobald or Mangold. Certain other prior wills of Rogers were offered and received in evidence. It appears that Rogers executed a will on January 4, 1965, which left Theobald a one-third interest in a farm and Mangold $1,000 in cash. In a will executed on January 6, 1967, Rogers left Theobald $10,000 in cash, and nothing to

Mangold. In his next will, executed on January 10, 1968, Rogers left nothing to the plaintiff or Mangold. In all subsequent wills executed by Rogers, which were received in evidence, he made no provision for Theobald or Mangold. In his amended petition, Theobald prays that the court find that a valid contract to devise or convey a real estate interest in the farm in question was consummated by and between Rogers and him; and that he had performed the contract on his part by remaining in the employment of the Company until it was sold, in reliance upon the existence of the contract, and that he was therefore entitled to specific performance of the contract. He prayed that the executrix be directed and ordered to convey to him an undivided one-third interest in the property. In their answer, the defendants allege, among other things: "(c) The amended petition discloses on its face that the alleged cause of action is based upon the alleged breach of an alleged oral contract for the conveyance of land, which under the provisions of Section 36-105 of the 1943 Revised Statutes of Nebraska, Reissue of 1974 is void and unenforceable."

The trial judge was faced with the issues as to whether there was in fact an oral agreement between the plaintiff and the deceased as alleged; and whether the evidence of such agreement and the terms thereof was clear, satisfactory, and unequivocal; and even if it were determined that there was an oral agreement for the conveyance of real estate, whether under section 36-106, R. R. S. 1943, there was sufficient part performance by the plaintiff to require specific performance of the contract in equity. Following the trial, the District Court dismissed plaintiff's petition and cause of action and specifically found that plaintiff's performance was not sufficient under section 36-106, R. R. S. 1943, and that the oral agreement was void under section 36-105, R. R. S. 1943. There is a dispute between the

parties as to whether the trial court found that there was a valid oral agreement between the parties, as alleged. In his brief on appeal, Theobald contends that the court so found. Defendants take the contrary position. We are not prepared to state that the trial court resolved this issue, and the language of the court contained in its order-opinion is illuminating and must be considered. We quote excerpts from the order: "4. Although the court *believes* from a consideration of all the evidence that there was a valid agreement between the parties, that issue and the evidence relating thereto, as well as to the terms and conditions, need not be discussed, as the final issue set forth above is dispositive of this litigation. * * * *Assuming* the existence and sufficiency of the agreement, and further that it is an oral agreement for the conveyance of real estate within the contemplation of section 36-105, the plaintiff relies upon his continued employment with O'Shea Rogers Tractor and Equipment Company until February 29, 1964 as his part performance. In support of this contention, he offered his own testimony, that of Verne Augustin, Edward Mangold, Eugene Sparrow, and in particular Exhibit No. 7. That exhibit reflects the plaintiff's wages from 1950 to 1964, and reveals that they diminished from and after 1959, the year of the *alleged* agreement. * * *." (Emphasis supplied.)

In view of the above language, we believe there are serious doubts as to whether the court determined that an oral contract was consummated between the plaintiff, Dale A. Theobald, and the deceased, Richard H. Rogers. In this connection, we also note that in his brief on appeal, Theobald contends that the contract in question was actually a three-party contract between him, his employer, O'Shea-Rogers Tractor and Equipment Company, and the deceased, who was president of and owner of stock in O'Shea-Rogers Tractor and Equipment Company. We think

it is clear from the evidence in the record that Rogers was acting on his own behalf in his conversations with his employees, because of the attitude of his partner, O'Shea, who was the owner of the other 50 percent of the stock in the corporation. This, we believe, is made clear by the testimony of Theobald himself with reference to a conversation with Rogers which occurred in December 1958, in which Rogers explained why he was providing for Mangold and Theobald in his will. He testified: " 'As you fellows know, this is a tough business and I think you fellows have done a good job. I know you work hard and you try. We are faced with a lot of problems in this business, these occasional droughts which affect sales, service problems, some of which have been horrendous, and we have to help the dealers all we can to keep them going, and quite frankly, I'm probably not paying you what I ought to be paying you, and I purposely kept salaries low because I don't want to get my salary level up to the point where in another year, a bad year, we would either have to cut back on salaries or let people go, and I don't like to do either one of those things. And we don't have a stock-option program because, as you know, I have a partner in this business and he is not much for that, and I have never personally been very enthusiastic about a profit-sharing plan, and I suppose if we installed one here we would probably have to do it down at the motor company and I know my partner is dead set against it down there. So,' he said, 'it doesn't really leave me much latitude in what I can do, except what I can do for you *in a personal* way to make it up to you. And this is what I've done.' " (Emphasis supplied.) It is clear that any contract, or negotiations for a contract, were between the plaintiff, Theobald, and the deceased, Richard H. Rogers, only. We conclude, however, that it is unnecessary for us to reach the question as to whether a valid contract or agreement between

the parties was ever reached, for the reason that it is possible to dispose of this litigation on the issue of the sufficiency of plaintiff's part performance of the alleged oral contract. Before proceeding to a discussion of that issue, it will be helpful to review certain well-established principles of law in this state with reference to contracts of the nature involved herein, and the sufficiency of part performance thereunder to take such contracts out of the operation of the statute of frauds.

Although cases stating and restating the law applicable to this situation involved herein are legion, a very recent exposition thereof is contained in Ross v. Ross, 192 Neb. 186, 219 N. W. 2d 756 (1974), in which case we stated: "In an action for specific performance of an oral contract to convey real estate where partial performance is relied upon to avoid the defense of the statute of frauds, the evidence of the alleged contract and its terms must be clear, satisfactory, and unequivocal. Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear, satisfactory, and unequivocal evidence, they are unenforceable unless it is also proved by evidence of like character that there has been such performance as the law requires. The acts constituting performance must be such as are referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract or relation. They must be something that the claimant would not have done unless and on account of the contract and with the direct view to its performance so that nonperformance by the other party would amount to fraud upon him. Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513." See, also, Rudolph v. Hartung, *post* p. 678, 277 N. W. 2d 60 (1979); 27 Neb. L. Rev. 417 (1948); 32 Neb. L. Rev., p. 1, at pp. 2 to 9 (1952).

Likewise, in Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525 (1948), after stating the rule with reference to the evidentiary burdens devolving upon the plaintiff to prove an oral contract, the terms of which are clear, satisfactory, and unequivocal and wherein the acts constituting performance were such as were referable solely to the contract sought to be enforced and not such as might be referable to some other or different contract, we also discussed the meaning of this latter rule, stating: "Properly interpreted and applied this rule means that if the evidence as a whole of a party seeking specific performance of an oral contract to convey real estate indicates that it is referable solely to the contract sought to be enforced and not to some other or different contract then the burden of the rule has been satisfied. The fact that there may be adversary evidence indicating that the acts refer to some other contract or situation will not defeat this satisfaction of the rule. Where one seeking specific performance of an oral contract to convey real estate has satisfied by evidence the requirements of this rule and there is evidence of an adversary in conflict therewith the decision on this question becomes one of preponderance with the preponderant burden on the one seeking performance.

"It appears proper to say that in determining whether or not the acts of plaintiff were referable solely to the contract alleged his acts of performance must be considered as a whole in their own light and in the light of all other material and relevant facts and circumstances, present, antecedent, and subsequent as shown by his evidence with no part excluded."

In this case the evidence in the record, considered in the light of the rules announced above, leads to the conclusion that plaintiff's acts of performance were not solely referable to the contract he seeks to have specifically performed and no other. Plaintiff has contended that his part performance of the al-

leged contract consisted of his continued employment by O'Shea-Rogers Tractor and Equipment Company at an income level below the industry average, and he has introduced in evidence an exhibit showing his income from prior and subsequent years. The evidence clearly reveals, however, that his income as shown by the exhibit included not only his base salary of $900 per month, but also reflected bonuses given him by the Company for each year. Contrary to his claims, plaintiff has not shown that his income decreased after the date the alleged contract was entered into. In 1959, his income increased over his 1958 income, which was the year the alleged contract was entered into. There is no showing that his continued employment by the Company was solely referable to his alleged agreement with Rogers, and there is no evidence in the record that he had ever threatened to quit his employment before Rogers informed him that he had provided for him in his will, which, incidentally, had already been drafted sometime prior thereto, without Theobald's knowledge. It seems clear that Theobald's continued employment was equally referable to his employment contract with the Company, under which contract he received payment for his services. It should also be noted that Theobald brought this action for specific performance against the Rogers' estate, and the Company was not made a party defendant.

This being an equity action, upon appeal to this court we review the evidence de novo. We agree with the conclusion of the trial court that the claimed act of partial performance by Theobald was not solely referable to the alleged Rogers' contract, but, to a substantial degree, was referable to his employment agreement with the Company. This fact was not only alleged in plaintiff's amended petition, but was also admitted in his direct testimony. There is no evidence indicating that his claimed acts of

performance were any different subsequent to the alleged agreement than they were prior thereto, nor is there evidence in the record that after his many years of continuous employment, he had ever threatened to resign either prior to or at the time of the alleged agreement. There is absolutely no evidence in the record that plaintiff was ever informed as to the period of time that he would have to work for the Company after the alleged agreement or that he agreed to work any specified period. It is not possible to conclude from the record, even assuming the existence of an oral agreement between Theobald and Rogers, that plaintiff's performance thereafter was solely referable to that agreement. While there are in this case certain equitable considerations revealed by the record that are favorable to plaintiff's position, we conclude from a de novo review of the record that the trial court was, under the facts and applicable law, correct in its decision that plaintiff's part performance did not comply with the requirement of section 36-106, R. R. S. 1943; and, therefore, even assuming the existence of an oral contract, such contract would be void under section 36-105, R. R. S. 1943. The trial court was correct in dismissing plaintiff's petition, and its action in so doing must be affirmed.

AFFIRMED.