IN RE ESTATE OF LAURA M. NICHOLSON.
BLANCHE J. WILLY, APPELLANT AND CROSS-APPELLEE,
v. MARION POWERS AND THE OMAHA NATIONAL BANK,
PERSONAL REPRESENTATIVES OF THE ESTATE OF LAURA
M. NICHOLSON, APPELLEES AND CROSS-APPELLANTS.

343 N.W.2d 758

Filed February 3, 1984. No. 83-080.

Daniel J. Duffy and Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Larry E. Welch of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This action was commenced by the filing of a claim in proceedings to administer the estate of Laura M. Nicholson, deceased. The claimant, Blanche J. Willy, alleged that she had furnished private duty nursing care to the decedent from April 1973 until her death in September 1978, pursuant to an agreement with the decedent that she would leave her entire estate to the claimant.

The claim was disallowed by the personal representatives of the deceased. A petition for allowance of the claim was filed, and, after hearing, the county court found there had been no proof of an oral contract or performance of such a contract. Upon appeal to the district court the motion of the personal representative The Omaha National Bank for a summary judgment was sustained.

In *In re Estate of Nicholson*, 211 Neb. 805, 320 N.W.2d 739 (1982), we reversed the summary judgment in favor of the defendants and remanded the cause to the district court for trial. The issues to be determined were whether an oral agreement to make a will existed, and, if so, whether there was

part performance such that the contract could be deemed to have been "executed" before January 1, 1977, within the purview of Neb. Rev. Stat. § 30-2351 (Reissue 1979), and such that a court of equity could compel specific performance.

Upon remand the trial court found that the evidence did not establish an oral agreement as alleged by the claimant and that the claimant had been fully paid for her services to the deceased. The claimant has again appealed to this court.

The record shows that beginning sometime in 1972, the claimant was employed by Hugo Nicholson, the late husband of the decedent, to provide private nursing care. Although not a registered nurse or a licensed practical nurse, the claimant provided geriatric nursing services on a private basis. The claimant cared for Hugo Nicholson at a salary rate of $3.50 per hour until his death in April 1973.

The claimant testified that sometime prior to Hugo's death he requested a commitment from the claimant that she would care for his wife, Laura, after his death. The claimant agreed to do so, and beginning shortly after Hugo's death she began to provide care and companionship to the deceased. In the beginning Laura was not in need of nursing care, but the claimant drove her to the doctor, to the hairdresser, to the grocery store, and to church. The claimant accompanied Laura on trips, and testified that she often took Laura to the claimant's home and cooked for Laura. The claimant testified that she kept herself available for Laura Nicholson, who often called her and requested services and companionship.

Although the claimant had been paid weekly by Hugo, the claimant testified that Laura told her after his death, "Blanche, I don't want to pay you; I'll take care of you when I die." Laura told her several times, "You'll be surprised, Blanche. I'm leaving you everything I have, but I expect you to take care of me." The claimant testified that she was

not paid for her services nor did she ever submit a bill prior to July 1978. In 1978 Laura Nicholson became ill and required full-time nursing care. The claimant testified that at that time Laura requested her to submit bills because the claimant would no longer be able to work part-time and Laura knew she needed the money. The claimant submitted statements for her services from April 1978 until Laura's death in September 1978, and she was paid for these services.

The will of Laura Nicholson, dated May 19, 1978, which was admitted to probate, provides in pertinent part: "EIGHTH. I give the sum of Five Thousand Dollars ($5,000.00), my davenport, large chair and foot stool, my secretary, my twin beds, my bedroom chest and night stand to my friend Blanche J. Willy presently of 350 North 41st Avenue, Omaha, Nebraska in appreciation of all of the kind and helpful things she has done for me." The claimant accepted the tangible property but has not accepted the $5,000 bequest.

Catherine Murphy, a registered nurse who sometimes substituted for the claimant in caring for Laura Nicholson, testified that she was not paid by Nicholson but was paid by the claimant. She testified that Laura Nicholson told her that Laura planned to "leave [Blanche] everything I have."

The claimant has assigned as errors the finding that an oral agreement did not exist and the failure of the court to find that there had been sufficient part performance of the contract prior to January 1, 1977. The personal representatives cross-appeal, assigning as error the failure of the court to determine that the contract was not executed prior to January 1, 1977, and thus that the requirements of § 30-2351 must be met.

We try the issues de novo and reach an independent conclusion without being influenced by the findings of the trial court, except to give weight to the fact that the trial court saw the witnesses and

observed their demeanor. *Chicago Lumber Co. v. Horner*, 210 Neb. 833, 317 N.W.2d 87 (1982); Neb. Rev. Stat. § 25-1925 (Reissue 1979).

Section 30-2351 sets forth the standard of proof in actions based upon a contract to make a will. The statute provides: "A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after January 1, 1977, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) a writing signed by the decedent evidencing the contract. The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills."

Since it is undisputed that no writing exists, a contract cannot be established pursuant to § 30-2351. The issue is whether an oral agreement existed and, if so, whether it was executed prior to January 1, 1977.

Where one is claiming the estate of a deceased person under an alleged oral contract, the evidence of the agreement and its terms must be clear, satisfactory, and unequivocal. *In re Estate of Layton*, 212 Neb. 518, 323 N.W.2d 817 (1982); *Guynan v. Guynan*, 208 Neb. 775, 305 N.W.2d 882 (1981); *Kimmel v. Roberts*, 179 Neb. 8, 136 N.W.2d 208 (1965).

In the present case the only evidence of an oral agreement was the testimony of the claimant and Catherine Murphy concerning statements made to them by the deceased. Evidence of declarations of a deceased person concerning a parol contract does not amount to direct proof of the facts claimed to have been admitted by those declarations. Such evidence, when not supported by other evidence, is generally entitled to but little weight. *In re Estate of Layton, supra*; *O'Neal v. First Trust Co.*, 160 Neb. 469, 70 N.W.2d 466 (1955).

The evidence does show that the claimant pro-

vided companionship to the deceased, without pay, from 1973 through 1977. The record further shows that the claimant paid Mrs. Murphy, her substitute. However, this evidence was not clear and unequivocal proof of an agreement.

The evidence does not disclose with the requisite clarity the terms of the alleged agreement. Although the claimant agreed to care for Laura Nicholson, the nature of the services she was to provide was not clear and her compensation was not discussed at that time. From 1973 to 1978 Laura Nicholson required no nursing care. The claimant provided various services such as companionship and cooking during this time and was not compensated for them. The testimony does not clearly reveal that the alleged promises made by the deceased to take care of the claimant or to leave her everything were made as consideration for these services. It can be concluded from the evidence that these promises were based upon an appreciation of the claimant's kindness and friendship. The statements allegedly made by Laura Nicholson with regard to taking care of the claimant or leaving her everything are not consistent, in that it is unclear how much of the monetary estate, if any, the claimant would receive. When the claimant provided nursing care during the last illness of the deceased, the claimant was paid for her services.

As we view the record, the claimant failed to show by clear, satisfactory, and unequivocal evidence the terms of the alleged oral agreement to bequeath the entire estate to her. As we stated in *In re Estate of Layton, supra* at 529, 323 N.W.2d at 823, " ' "It is very proper that the assertion of such a contract, especially when it is claimed to be entirely in parol, should be regarded by the court with grave suspicion, and the establishment thereof required by evidence which clearly indicates the minds of the parties met upon the terms of the contract sought to be established." ' *Rudolph v. Hartung*, 202 Neb. 678,

683, 277 N.W.2d 60, 63 (1979). One can hardly say that the minds of the parties met upon the terms of an oral agreement when the record does not reveal with certainty what the terms of the alleged agreements were.''

Declarations of intention or of the wishes of the parties do not tend to support a conclusion that a contract to bequeath has been proven by clear, definite, satisfactory, and unequivocal evidence. *Eagan v. Hall*, 159 Neb. 537, 68 N.W.2d 147 (1955). In the present case we at best can conclude only that Laura Nicholson stated that she planned to leave claimant all or a portion of her estate.

There being no proof of a contract, we need not consider the other assignments of error or the cross-appeal. The judgment of the district court is affirmed.

AFFIRMED.