Gerald Ficke, appellee, v.
Gilbert Wolken, appellant.
___ N.W.2d ___

Filed December 9, 2014.    No. A-13-906.

1. **Specific Performance: Equity.** An action for specific performance sounds in equity.
2. **Equity: Appeal and Error.** When an equity case is appealed from the district court, the appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court.
3. **Equity: Evidence: Appeal and Error.** When evidence conflicts in an equity action, an appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.
4. **Contracts: Real Estate.** An oral agreement for the transfer of title to real estate is voidable under the statute of frauds.
5. **Contracts: Specific Performance: Real Estate.** Specific performance of an oral agreement to convey real estate will be enforced by a court of equity where one party has wholly performed his part thereof and the other party has not performed his part, and its nonperformance on the one hand would amount to a fraud on the party who has fully performed it.
6. **Contracts: Specific Performance: Real Estate: Proof.** A party seeking specific performance of an oral contract for the sale of real estate upon the basis of part performance must prove an oral contract, the terms of which are clear, satisfactory, and unequivocal, and that the acts done in part performance were referable solely to the contract sought to be enforced, and not such as might be referable to some other or different contract, and further that nonperformance by the other party would amount to a fraud upon the party seeking specific performance.
7. **Contracts: Specific Performance: Real Estate: Evidence.** In an action for specific performance of an oral contract to convey real estate where partial performance is relied upon to avoid the defense of the statute of frauds, the evidence of the alleged contract and its terms must be clear, satisfactory, and unequivocal.
8. **Contracts.** A mutual understanding sufficient to establish the terms of a contract may be implied from the conduct of the parties and the surrounding circumstances.
9. **Contracts: Evidence: Proof.** When the existence and terms of an oral contract have been established by clear, satisfactory, and unequivocal evidence, the contract is nonetheless unenforceable unless it is also proved by clear, satisfactory, and unequivocal evidence that there has been such performance as the law requires.
10. **Contracts: Specific Performance: Real Estate.** In an action for specific performance of an oral contract to convey real estate where partial performance is relied upon to avoid the defense of the statute of frauds, the acts constituting performance must be such as are referable solely to the contract sought to be

enforced, and not such as might be referable to some other and different contract or relation.

11. **Contracts.** The unconscionability of a contract provision presents a question of law.

12. **Contracts: Words and Phrases.** When considering whether an agreement is unconscionable, the term "unconscionable" means manifestly unfair or inequitable.

13. **Contracts.** A contract can be either procedurally or substantively unconscionable.

14. **Contracts: Words and Phrases.** Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract.

15. **Contracts.** A contract is not substantively unconscionable unless the terms are grossly unfair under the circumstances that existed when the parties entered into the contract.

Appeal from the District Court for Gage County: Paul W. Korslund, Judge. Affirmed.

Lyle J. Koenig, of Koenig Law Firm, for appellant.

Bradley A. Sipp for appellee.

Inbody, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Gilbert Wolken appeals from the order of the district court for Gage County which ordered specific performance of an oral contract for the transfer of land from Wolken to Gerald Ficke. Because we find that the evidence establishes that the oral contract falls within an exception to the statute of frauds, we affirm.

## BACKGROUND

This case arises out of an alleged oral promise by Wolken to give Ficke 80 acres of farmland after Ficke had worked for Wolken for 10 years. A bench trial was held in the district court, during which the following evidence was adduced:

Ficke began working for Wolken as a farmhand on January 10, 2000. His duties included tending to cattle, maintenance, mechanical work, and other activities associated with farming. Ficke typically worked between 40 and 60 hours per week,

depending on the season, and was "on-call" at all times. He was often called in to work on weekends, after midnight, and during his vacations, but was compensated for his overtime hours. Although his starting wage was only $7.50 per hour, his rate of pay increased to $14.75 per hour by September 2010. He also received bonuses at Christmastime that totaled anywhere from $500 to $2,000.

During the early spring of 2003, Wolken told Ficke that he would give him a specific 80 acres of farmland after Ficke had worked for him for 10 years. Although the agreement was not reduced to writing, they talked about it many times over the years. Wolken would often remind Ficke in January how many years were remaining until he would get the land. For example, in January 2008, Wolken told Ficke, "[T]wo more years and [that 80 acres is] yours."

According to Ficke, on January 10, 2010, Wolken told him that he had completed his 10 years and that the 80 acres was his. Although Wolken did not sign over the land to Ficke, he started treating it like it belonged to Ficke. For example, after harvest that year, Wolken directed the cooperative where Wolken stored his grain to pay Ficke 40 percent of the wheat proceeds from that 80 acres as rent. Ficke received a check from the cooperative dated July 14, 2010, for over $5,000. Wolken admitted that he directed the cooperative to issue the check to Ficke, but stated the following reason for doing so: "I thought he could perform better on his job, that he'd settle down and make a man of himself. . . . You do things sometimes to get a guy on the right track." According to Wolken, the check was a bonus payment.

Ficke also testified that Wolken told him in 2010 that he would need to start paying the taxes on the land. Although Ficke never paid any of the taxes, he testified that he offered to do so many times but that Wolken was unsure of the amount. Wolken repeatedly told him not to worry about it and that they would get it straightened out later.

Ficke testified that he had considered quitting his job with Wolken because he worked constantly, had no family life, and had no health insurance for 5 or 6 years. He further testified that he thought he "could do better," but that "80 acres after

ten years isn't a bad deal either." When asked why he stayed working for Wolken, Ficke stated: "Well, 80 acres, and farming, that's what I loved. I loved to farm. And after the ten years, a bonus like that is something that a person works for." However, Ficke also admitted that he needed to earn a living and that he was working to support his family.

Ficke testified that he received one offer of employment during the time he worked for Wolken, but that it offered a lower wage than he was earning at that time. Ficke acknowledged that he worked substantially the same hours the entire period of time he worked for Wolken and that his wages increased over that time.

Wolken terminated Ficke's employment on September 28, 2010. According to Wolken, Ficke's employment was terminated due to his temper and the fact that he got "tangled up with [Wolken's] wife." Ficke testified that Wolken called him a couple of days later and apologized for letting him go. Wolken told Ficke that Wolken could not believe Wolken would let a woman come "between a working relationship like" theirs.

A couple of weeks later, Ficke stopped by Wolken's place to pick up his property. According to Ficke, Wolken told him at that time that he was trying to figure out how he could purchase the 80 acres from Ficke without either of them having to pay too much in taxes. Their conversation was interrupted by Wolken's wife, and they never spoke about it again.

Wolken admitted that in 2003, he promised Ficke the 80 acres "if he fulfilled his job" of providing "good decent help" for 10 years. According to Wolken, he made the promise in order to give Ficke "a better attitude on the job" but Ficke did not work for him for 10 years after that promise was made. Wolken's sister and neighbor testified, however, regarding conversations that took place in 2010 in which Wolken stated that he had given the 80 acres to Ficke for working for him for 10 years.

The district court ruled in favor of Ficke, finding that Ficke's testimony was "completely credible." It found that Ficke had established an oral contract by clear and unequivocal evidence and that an equitable exception to the statute of

frauds applied because Ficke had performed his part of the contract and such performance was solely referable to the contract sought to be enforced. It determined that Ficke was entitled to specific performance of the oral contract, but ordered further hearing to obtain an adequate legal description of the tract of land in question. After the parties stipulated to the land's legal description, the court awarded the land to Ficke. Wolken timely appeals.

## ASSIGNMENTS OF ERROR

Wolken assigns that the district court erred in (1) finding that Ficke established the terms of an oral contract by clear, satisfactory, and unequivocal evidence; (2) finding that Ficke proved by clear, satisfactory, and unequivocal evidence that his performance of the alleged oral contract was referable solely to the alleged oral contract and not to some other contract or relation; and (3) failing to find that the alleged oral contract was unenforceable as against public policy.

## STANDARD OF REVIEW

[1-3] An action for specific performance sounds in equity. *Sayer v. Bowley*, 243 Neb. 801, 503 N.W.2d 166 (1993). When an equity case is appealed from the district court, the appellate court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court. *Id*. When the evidence conflicts, however, the appellate court may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Id*.

## ANALYSIS

[4,5] It is the general rule that an oral agreement for the transfer of title to real estate is voidable under the statute of frauds. *Hackbarth v. Hackbarth*, 146 Neb. 919, 22 N.W.2d 184 (1946); Neb. Rev. Stat. §§ 36-103 and 36-105 (Reissue 2008). A well-known exception to that rule, however, is that specific performance of an oral agreement to convey real estate will be enforced by a court of equity where one party has wholly performed his part thereof and the other party has not performed his part, and its nonperformance on the one

hand would amount to a fraud on the party who has fully performed it. *Hackbarth v. Hackbarth, supra*. Because the agreement before us was not reduced to writing, it is subject to the statute of frauds and therefore unenforceable, unless it falls within the exception for part performance.

[6] A party seeking specific performance of an oral contract for the sale of real estate upon the basis of part performance must prove an oral contract, the terms of which are clear, satisfactory, and unequivocal, and that the acts done in part performance were referable solely to the contract sought to be enforced, and not such as might be referable to some other or different contract, and further that nonperformance by the other party would amount to a fraud upon the party seeking specific performance. *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011).

*Existence and Terms of Oral Contract.*

[7] In an action for specific performance of an oral contract to convey real estate where partial performance is relied upon to avoid the defense of the statute of frauds, the evidence of the alleged contract and its terms must be clear, satisfactory, and unequivocal. *Theobald v. Agee*, 202 Neb. 524, 276 N.W.2d 191 (1979).

[8] Upon our review of the evidence, Ficke has met his burden of proving the existence of an oral agreement and its terms by clear, satisfactory, and unequivocal evidence. Ficke testified that Wolken agreed to give him a certain 80 acres of land after he had worked for him for 10 years. Although their initial agreement did not specify when the 10-year period began, Ficke assumed that it began when he started working for Wolken in January 2000, which was confirmed by Wolken's subsequent conduct. See *Hoeft v. Five Points Bank*, 248 Neb. 772, 780, 539 N.W.2d 637, 644 (1995) ("'"mutual understanding . . . sufficient to establish [the terms of] a contract . . . may be implied from conduct [of the parties] and the surrounding circumstances"'").

Wolken and Ficke spoke about the agreement many times over the years, and Wolken would often remind Ficke in January regarding the number of years remaining until he

would get the land. Ficke testified that on January 10, 2010, Wolken told him he had completed his 10 years and the 80 acres was his. Ficke testified that although Wolken did not deliver the deed to the land to Ficke, Wolken shared the proceeds of the harvest with him as rent and told him that he needed to pay taxes on the land. Wolken acknowledged that he made this agreement with Ficke, but denied that the cooperative check was for rent. Two uninterested witnesses, however, testified that Wolken told them in 2010 that he had given the land to Ficke for working for him for 10 years. Thus, we conclude that Ficke met his burden of establishing both the existence of the oral contract and its terms by clear, satisfactory, and unequivocal evidence.

*"Solely Referable" to Oral Contract.*

[9,10] Even when the existence and terms of an oral contract have been established by clear, satisfactory, and unequivocal evidence, the contract is nonetheless unenforceable unless it is also proved by clear, satisfactory, and unequivocal evidence that there has been such performance as the law requires. See *Theobald v. Agee, supra*. The acts constituting performance must be such as are referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract or relation. *Id*. The performance must be something that the claimant would not have done "unless and on account of the contract and with the direct view to its performance so that nonperformance by the other party would amount to fraud upon him." *Id*. at 531, 276 N.W.2d at 195.

Wolken relies primarily on two Nebraska Supreme Court cases to support his argument that Ficke did not prove that his continued employment was referable solely to the oral promise. See *In re Estate of Layton*, 212 Neb. 518, 323 N.W.2d 817 (1982), and *Theobald v. Agee, supra*.

In *In re Estate of Layton*, an employee of the decedent's hardware store filed a claim against the decedent's estate, alleging that during the last 10 years of the decedent's life, he had promised the employee on numerous occasions that he would execute a will leaving the hardware store to the

employee in return for the employee's "long and faithful service" at that store. 212 Neb. at 519, 323 N.W.2d at 818. The evidence at trial showed that the employee had worked at the hardware store for 50 years and that in response to the employee's having been offered two other job opportunities which he declined, the decedent promised the employee that the store and inventory would be his when the decedent reached the age of 65. The employee testified that he remained working at the store 6 days a week for 10 hours per day, at what he felt were low wages, because of the decedent's promise. However, the evidence showed that the promise was altered several times prior to the decedent's death.

A jury returned a verdict in favor of the employee. The Nebraska Supreme Court reversed the jury's verdict, basing the reversal in part on its finding that the employee failed to show that his continued service was referable solely to the alleged oral promise. The court relied heavily on the employee's admission that he did nothing more after the promise was made than he had been doing prior to the promise. It further reasoned:

> We must note that the [employee] continued to be compensated for his services following the making of the purported agreement and received annual raises in that compensation. There is not evidence in the record, other than the [employee's] bare assertions, to indicate that the [employee] was being undercompensated for the work he was doing. Consequently, the [employee] has by his own admission made it impossible to distinguish between his performance rendered under his employment contract and his performance rendered under the alleged agreement at issue herein. We are unable to draw such a distinction and therefore must conclude that the [employee] has failed to prove that his performance following the making of the alleged agreement was "'not such as might have been referable to some other or different contract.'"

*In re Estate of Layton*, 212 Neb. at 530, 323 N.W.2d at 823.

In *Theobald v. Agee*, 202 Neb. 524, 276 N.W.2d 191 (1979), the owner of a farm equipment company allegedly promised

two of his employees that he would leave them an interest in a farm he owned if they would remain in his employ. The plaintiff continued working for the company until it was sold approximately 6 years later. The owner subsequently died and left nothing to the two employees in his will. The plaintiff sought specific enforcement of the oral promise based on his continued employment and the fact that his wages had decreased after the contract was made.

The Nebraska Supreme Court affirmed the trial court's ruling that the plaintiff failed to show that his continued employment was solely referable to the promise of land. It noted, contrary to the plaintiff's argument, that the plaintiff's total income actually increased after the contract was made due to the payment of bonuses. Further, the court found no evidence indicating that the plaintiff's performance was any different after the alleged agreement than it was prior thereto and no evidence that the plaintiff had ever threatened to resign either prior to or at the time of the alleged agreement. Therefore, the court found that the plaintiff's continued employment was equally referable to his employment contract with the company and that the alleged agreement therefore did not fall within an exception to the statute of frauds.

What we glean from these two cases is that it is incumbent upon the plaintiff to prove the sole reason he continued in his employment was to attain what was promised and that it is insufficient if the evidence fails to prove the promise was the enticement for the continued employment. Like the employees in *In re Estate of Layton*, 212 Neb. 518, 323 N.W.2d 817 (1982), and *Theobald v. Agee, supra*, Ficke was employed in a manner substantially the same both before and after the oral promise was made, he continued to receive compensation for his work with annual raises and bonuses, and he never rejected other job opportunities because of the promise. However, unlike the testimony of the employees in those two cases, Ficke's testimony supports a conclusion that the sole reason he continued his employment was to attain the land that was promised. During trial, the following testimony was adduced from Ficke:

[Ficke's counsel:] During this ten-year, nine-month span of time that you worked for . . . Wolken, did you ever think about quitting?

[Ficke:] Oh, yes.

Q. Why?

A. Well, I worked constantly. I had no family life, insurance. I had no health insurance for, I don't know, five, six years. I just, you know, I always thought, you know, that I could do better, but then in the back of me [sic] mind, yeah, 80 acres after ten years isn't a bad deal either.

Q. Did you ever decide to stay working for . . . Wolken because of his promise?

[Wolken's counsel]: We will object on the ground that it's leading and suggestive, Your Honor.

THE COURT: Sustained.

[Ficke's counsel:] Well, you testified that you thought about quitting before. Why did you stay with him?

[Ficke:] Well, 80 acres, and farming, that's what I loved. I loved to farm. And after the ten years, a bonus like that is something that a person works for.

Although the court prevented Ficke from testifying to the ultimate question of whether he continued working for Wolken because of the promise, Ficke's testimony proves that obtaining the 80 acres was the reason he did not quit. We further note that although our review is de novo, we are not precluded from giving weight to the fact that the trial court saw the witnesses and observed their demeanor while testifying. *In re Estate of Layton, supra*. The trial judge indicated in his order that he found Ficke to be "completely credible," and this further supports our conclusion that the trial court did not err in finding that Ficke's continued employment was solely referable to the promise of receiving the 80 acres.

*Public Policy.*

Wolken argues that the alleged oral argument was unenforceable as against public policy because the value of the land was $640,000. He claims it would be unconscionable for Ficke to receive this much, since his only "'consideration'" was his

continued employment, for which he was compensated by salary and bonus. Brief for appellant at 19. We disagree.

[11-14] The unconscionability of a contract provision presents a question of law. *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006). When considering whether an agreement is unconscionable, the term "unconscionable" means manifestly unfair or inequitable. *Id*. A contract can be either procedurally or substantively unconscionable. *Adams v. American Cyanamid Co*., 1 Neb. App. 337, 498 N.W.2d 577 (1992). "'Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract.'" *Id*. at 356, 498 N.W.2d at 590, quoting *Schroeder v. Fageol Motors*, 86 Wash. 2d 256, 544 P.2d 20 (1975).

[15] Based upon Wolken's argument that the agreement provides a "windfall" to Ficke, brief for appellant at 19, we construe his position as that of substantive unconscionability. A contract is not substantively unconscionable unless the terms are grossly unfair under the circumstances that existed when the parties entered into the contract. *Adams v. American Cyanamid Co., supra*.

According to the evidence, the spring of 2003 is when Wolken made the promise to convey the land. To determine if a contract is substantively unconscionable, we view the contract at the time it was made. There is no evidence as to the value of the land promised as of the spring of 2003, and the present value of the land, to which the parties stipulated, does not provide any insight into its value in 2003. Moreover, the evidence reveals that the promise was for 80 acres; Wolken owns 700 acres and rents another 200. He also owns 875 head of cattle and has a substantial farming operation. The relationship between Wolken and Ficke was not only that of employer and employee, but also that of "[v]ery good friends." Ficke testified that his family and Wolken would go together to concerts and family activities and dine and fish together. Therefore, while the promise of 80 acres may appear generous, given the facts and circumstances of this case, it does not rise to the level of unconscionable. The

trial court did not err in refusing to invalidate the agreement as unconscionable.

## CONCLUSION

Upon our de novo review of the record, we find that Ficke met his burden of proving both the existence of the oral contract and its terms by clear, satisfactory, and unequivocal evidence. We also conclude that he sufficiently proved that his performance was solely referable to the oral contract. We determine that the contract was not unconscionable, and we affirm the district court's order.

AFFIRMED.

---

State of Nebraska, appellee, v.
Aaron P. Brooks, appellant.
___ N.W.2d ___

Filed December 9, 2014.    No. A-14-246.

1. **Sentences: Prior Convictions: Appeal and Error.** A sentencing court's determination concerning the constitutional validity of a prior plea-based conviction, used for enhancement of a penalty for a subsequent conviction, will be upheld on appeal unless the sentencing court's determination is clearly erroneous.
2. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.
3. **Sentences: Probation and Parole.** It is within the discretion of the trial court whether to impose probation or incarceration.
4. **Prior Convictions: Proof.** In a proceeding to enhance a punishment because of prior convictions, the State has the burden of proving such prior convictions by a preponderance of the evidence.
5. **Sentences: Prior Convictions: Evidence: Proof.** On an appeal of a sentence enhancement hearing, an appellate court views and construes the evidence most favorably to the State.
6. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
7. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language.