SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| HAL OWENS, a married man dealing with his sole and separate property, | ) Arizona Supreme Court<br>) No. CV-07-0349-PR<br>)<br>) |
| Plaintiff/Counterdefendant/<br>Appellee, | ) Court of Appeals<br>) Division One<br>) No. 1 CA-CV 06-0162<br>) |
| v. | )<br>) Maricopa County |
| M.E. SCHEPP LIMITED PARTNERSHIP, an Arizona limited partnership, | ) Superior Court<br>) No. CV2005-008357<br>) |
| Defendant/Counterclaimant/<br>Appellant. | )<br>)<br>) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Kenneth L. Fields, Judge
The Honorable Colleen L. French, Judge Pro Tempore

**AFFIRMED**
_____

Opinion of the Court of Appeals, Division One
216 Ariz. 273, 165 P.3d 674 (2007)

**VACATED**
_____

PERKINS COIE BROWN & BAIN, P.A.                              Phoenix
    By   Jordan Green
         Steven J. Monde
Attorneys for Hal Owens

McCABE O'DONNELL, P.A.                                       Phoenix
    By   Joseph I. McCabe
         Clifford J. Roth
Attorneys for M.E. Schepp Limited Partnership
_____

**H U R W I T Z**, Justice

¶1    This case involves a dispute about the partition of land held by family members as tenants in common. The issue for decision is whether an alleged oral partition agreement was removed from the statute of frauds by part performance.

## I.

¶2    Hal Owens and the M.E. Schepp Limited Partnership ("the Partnership") own land at Missouri Avenue and 22nd Street in Phoenix ("the Parcel") as tenants in common. The Parcel consists of Lots 17 and 18, which are vacant, and Lot 20, which is improved. Owens owns an undivided two-thirds interest; the Partnership has the remaining third. Thomas Schepp, Owens's cousin, has lived in a house on Lot 20 since 1990; a guest house on that lot is rented to third parties. Thomas and his brother Rex Schepp manage the Partnership.

¶3    Owens filed this suit in May 2005, seeking to partition the Parcel pursuant to Arizona Revised Statutes ("A.R.S.") §§ 12-1211 to -1225 (2003). The Partnership counterclaimed, contending that statutory partition was inappropriate because the parties had entered into an oral voluntary partition agreement; the counterclaim sought specific performance of that agreement.

¶4    Owens moved for partial summary judgment, asserting that the alleged voluntary partition agreement did not exist, but that even if it did, it was unenforceable under the statute of frauds, A.R.S. § 44-101(6) (2003). The superior court granted the motion, ruling that there was no partition agreement. The court ordered the appointment of three commissioners to partition the Parcel. *See* A.R.S. § 12-1215(B).

¶5    A divided court of appeals reversed. *Owens v. M.E. Schepp Ltd. P'ship*, 216 Ariz. 273, 165 P.3d 674 (App. 2007). The court of appeals first found a genuine issue of material fact as to whether the parties had entered into an oral voluntary partition agreement. *Id*. at 279 ¶ 27, 165 P.3d at 680. Turning to Owens's statute of frauds arguments, the court held that a voluntary partition agreement falls within the statute of frauds. *Id*. at 280-81 ¶¶ 29-33, 165 P.3d at 681-82. The court then concluded that no writing satisfied the statute. *Id*. at 281 ¶¶ 34-36, 165 P.3d at 682. It held, however, that the summary judgment was erroneous because the Partnership had produced sufficient evidence of part performance to take the contract out of the statute of frauds and that this issue should have been submitted to a jury. *Id*. at 281-84 ¶¶ 37-42, 165 P.3d at 682-85. The dissenting judge found the alleged acts of part performance insufficient as a matter of law to avoid the statute

3

of frauds. *Id*. at 284-86 ¶¶ 44-50, 165 P.3d at 685-87 (Timmer, J., dissenting).

¶6        We granted review to consider the question that divided the court of appeals:  Do the alleged acts of part performance remove the oral partition agreement from the statute of frauds?  We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

¶7        Our consideration of the issue before us centers on the alleged acts of part performance.  We review the facts in the light most favorable to the Partnership, the party against whom summary judgment was entered.  *See Myers v. City of Tempe*, 212 Ariz. 128, 130 ¶ 7, 128 P.3d 751, 753 (2006).

## A.

¶8        On June 18, 2004, the City of Phoenix issued a citation requiring cleanup of vegetation on the Parcel.  The Schepp brothers and Owens met in early July to discuss the citation.  At that meeting, Owens proposed removing trees along Missouri Avenue, the northern boundary of Lots 17 and 18; the Schepps objected, fearing complaints from neighbors.  The parties eventually agreed to partition the Parcel, with the Partnership taking Lot 20 and Owens taking Lots 17 and 18.  Because of its improvements, Lot 20 is arguably the most

4

valuable of the three, so Owens claimed that the suggested partition should involve an equalization payment to him from the Partnership. No agreement was reached concerning a payment, but the Schepps understood that Owens might reiterate such a demand in the future.

¶9 Later in July, a contractor hired by Owens began the tree removal. Thomas Schepp confronted Owens and objected. Owens responded that Lots 17 and 18 belonged to him and that the decision to remove the trees was therefore his alone. After Owens reaffirmed that a partition agreement had been reached at the earlier meeting, Thomas withdrew his objection.

¶10 The Partnership later paid $16,600, one-third of the cost of the tree removal, directly to the landscaping contractor. The Partnership claims the payment was an installment on any equalization due Owens under the oral partition agreement.[1]

**B.**

¶11 The Partnership contended below that the oral partition agreement was removed from the statute of frauds because of two acts of part performance: (1) Thomas Schepp's

---

[1] After the tree removal, the parties unsuccessfully attempted to agree upon an equalization payment. Owens sought $233,333 and an access easement to Lots 17 and 18. The Partnership proposed a division with no payment or easement.

withdrawal of his objections to the tree removal, and (2) the payment to the contractor. The court of appeals panel unanimously agreed that alleged acts of part performance must be "unequivocally referable" to an alleged contract in order to remove the agreement from the statute of frauds. *Owens*, 216 Ariz. at 282 ¶ 38, 165 P.3d at 683 (majority opinion); *id.* at 284 ¶ 44, 165 P.3d at 685 (dissenting opinion).

¶12    The judges of the court of appeals parted company, however, on whether the two acts described above met this test. The majority believed that the Partnership's explanation that the two acts were undertaken in reliance on the partition agreement created an issue of fact as to part performance. *Id.* at 282-83 ¶ 39, 165 P.3d at 683-84. The dissenting opinion, on the other hand, maintained that a court can look only to the conduct itself when determining whether an act is unequivocally referable to an oral contract, not to a party's explanations of the acts. *Id.* at 284 ¶ 45, 165 P.3d at 685.

## C.

¶13    The Arizona statute of frauds states, in relevant part:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be

charged, or by some person by him thereunto lawfully authorized:

. . . .

Upon an agreement . . . for the sale of real property or an interest therein.

A.R.S. § 44-101(6). The court of appeals held, and the parties do not dispute, that an oral partition agreement among tenants in common is "for the sale of real property" and thus within the scope of § 44-101(6). *See Owens*, 216 Ariz. at 281 ¶ 33, 165 P.3d at 682; *see also* Restatement (Second) of Contracts § 128(2) (1981) ("A contract by joint tenants or tenants in common to partition land into separate tracts for each tenant is within the Statute of Frauds."). Nor does Owens contest the holding below that the superior court erred by granting summary judgment as to the existence of an oral partition contract. We therefore assume that such an agreement exists.

**¶14** The statute of frauds is by its terms absolute, providing that "[n]o action" can be brought on oral contracts for the conveyance of land. Arizona courts, however, have long recognized limited exceptions to the statute. *See, e.g., Latimer v. Hamill*, 5 Ariz. 274, 277-78, 52 P. 364, 366 (1898) (characterizing the part performance exception as "too well settled to require citations of authority"). The cases reason that because the statute is intended to prevent fraud, specific

7

performance of an oral contract is sometimes required to prevent the statute from becoming "an instrument by which fraud is perpetrated." *Trollope v. Koerner*, 106 Ariz. 10, 16, 470 P.2d 91, 97 (1970).

¶15    The "part performance" exception to the statute of frauds is grounded in the equitable principle of estoppel. *Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy*, 20 Ariz. App. 122, 125, 510 P.2d 752, 755 (1973), *disavowed on other grounds by Gibson v. Parker Trust*, 22 Ariz. App. 342, 345, 527 P.2d 301, 304 (1974); 4 Caroline N. Brown, *Corbin on Contracts* § 18.1, at 501 & nn. 11-12 (rev. ed. 1997); Restatement (Second) of Contracts § 129 reporter's note.  The label "part performance" is in some ways a misnomer:  the relevant acts need not be required by the oral agreement, but rather must be undertaken in reliance on the agreement.  Restatement (Second) of Contracts § 129 cmt. a; 4 *Corbin on Contracts* § 18.7, at 513-14; Restatement (First) of Contracts § 197 cmt. b (1932).

¶16    In addition to providing an equitable basis for ordering specific performance, acts of part performance serve an important evidentiary function - they excuse the writing required by the statute because they provide convincing proof that the contract exists.  *See* Restatement (Second) of Contracts § 129 cmt. b; 4 *Corbin on Contracts* § 18.11, at 521.  So that

this exception does not swallow the rule, the acts of part performance take an alleged contract outside the statute only if they cannot be explained in the absence of the contract. *See Gene Hancock*, 20 Ariz. App. at 125, 510 P.2d at 755; *In re Marriage of Benson*, 116 P.3d 1152, 1160 (Cal. 2005); *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 951 (Conn. 2005); *Martin v. Scholl*, 678 P.2d 274, 276-78 (Utah 1983). Judge Cardozo eloquently described the part performance exception more than eighty years ago:

> There must be performance "unequivocally referable" to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.
>
> . . . .
>
> What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done.

*Burns v. McCormick*, 135 N.E. 273, 273 (N.Y. 1922). Cardozo illustrated the point with two scenarios:

> The housekeeper who abandons other prospects of establishment in life and renders service without pay upon the oral promise of her employer to give her a life estate in land must find her remedy in an action to recover the value of the service. Her conduct, separated from the promise, is not significant of ownership, either present or prospective. On the other hand, the buyer who not only pays the price, but possesses and improves his acre, may have relief in equity without producing a conveyance. His conduct is

9

> itself the symptom of a promise that a conveyance will
> be made.

*Id.* at 273-74 (citations omitted).

**¶17** The *Burns* reasoning is reflected in the First Restatement of Contracts, which recognized the part performance exception only when the purchaser "makes valuable improvements on the land" or "takes possession . . . and also pays a portion or all of the purchase price." Restatement (First) of Contracts § 197. *See Condon v. Ariz. Hous. Corp.*, 63 Ariz. 125, 133, 160 P.2d 342, 346 (1945) (applying First Restatement).

**¶18** The Second Restatement, adopted in 1981, relies expressly on principles of estoppel, and thus provides a broader formulation of the part performance rule:

> A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.

Restatement (Second) of Contracts § 129. Under § 129, acts other than undertaking improvements, paying the purchase price, and taking possession can be considered as part performance. *Id.* § 129 cmt. d. But the Second Restatement does not abandon the traditional requirement that the acts of part performance be "unequivocally referable" to the alleged agreement. *Id.* The

10

modern case law thus requires that any alleged act of part performance be consistent only with the existence of a contract and inconsistent with other explanations such as ongoing negotiations, *Glazer*, 873 A.2d at 950-51, or an existing relationship between the parties, *Nelson v. Miller*, 479 So. 2d 1225, 1226 (Ala. 1985) (tenants in common and brother-sister); *Sword v. Sweet*, 92 P.3d 492, 500 (Idaho 2004) (husband-wife); *Player v. Chandler*, 382 S.E.2d 891, 894 (S.C. 1989) (landlord-tenant); *Martin*, 678 P.2d at 279 (employer-employee). If the alleged acts do not conclusively establish that a contract exists, reliance upon them would circumvent the evidentiary function of the statute.[2]

**D.**

¶19     The court of appeals held that the Partnership's withdrawal of its objection to the tree removal and its payment of one-third of the landscaping contractor's bill raised a triable issue of fact about part performance. We disagree. Neither act is "unequivocally referable" to the alleged contract, or put differently, neither act is "of such character

---

[2]     The Second Restatement also stresses a principle noted in our cases: The part performance exception, grounded in principles of equity, should not be invoked unless necessary to avoid injustice. *See Remele v. Hamilton*, 78 Ariz. 45, 49, 275 P.2d 403, 406 (1954); *Haynie v. Taylor*, 69 Ariz. 339, 346, 213 P.2d 684, 689 (1950).

as not to be reasonably explicable on other grounds." 4 *Corbin on Contracts* § 18.23, at 564; *see also Verzier v. Convard*, 52 A. 255, 257 (Conn. 1902) (stating that part performance must consist of acts that "cannot, in the ordinary course of human conduct, be accounted for in any other manner than as having been done in pursuance of a contract" (citing John N. Pomeroy, *Specific Performance of Contracts* § 108, at 154 (2d ed. 1897))).

¶20    The payment to the contractor is not convincing evidence of an agreement to partition, let alone "unequivocally referable" to such a contract.  Given that the Partnership had a one-third interest in the Parcel, its payment of one-third of the contractor's bill is more consistent with the continued existence of the co-tenancy than with an agreement to partition. *See* 20 Am. Jur. 2d, *Cotenancy & Joint Ownership* § 64, at 157–58 (2d ed. 1995) (noting general rule that tenants in common share financial responsibility for maintenance of property in proportion to their interests).  Indeed, had the parties actually agreed to partition the Parcel, the Partnership would have had no financial responsibility for tree removal on Lots 17 and 18.

¶21    Similarly, the withdrawal of objections to the tree removal, while perhaps more probative of an agreement to partition, is also consistent with a number of other scenarios,

12

including continued co-tenancy, *cf*. *Jackson v. Low Cost Auto Parts, Inc.*, 25 Ariz. App. 515, 516, 544 P.2d 1116, 1117 (1976) (noting right of tenant in common to use and enjoy the entire property "as if he were the sole owner, provided his actions do not prejudice the use and enjoyment of the property by the other co-owner"), or ongoing negotiations about partition.[3]  Once again, if, as the Partnership contends, Lots 17 and 18 had already been promised to Owens, it is difficult to understand why Thomas Schepp felt he could object to, let alone prevent, Owens's actions.

¶22      The Partnership argues, however, that because Thomas Schepp's affidavit must be taken as true for purposes of summary judgment, his explanations for the acts also must be accepted. It follows, the Partnership argues, that the alleged acts of part performance were unequivocally referable to the partition contract because Schepp claims the contract was the only reason for these acts.

¶23      This argument fails.  The issue is not whether a court must take as true assertions in an affidavit of a party opposing a summary judgment motion.  Rather, we must decide whether

---

[3]      Typically, forbearance to act carries less evidentiary value in showing part performance than an affirmative act because inaction can easily be ascribed to reasons other than a contract. *See, e.g.*, *Martin*, 678 P.2d at 279; *Beall v. Beall*, 434 A.2d 1015, 1020 (Md. 1981).

13

Schepp's explanations, even if assumed true, can be used to satisfy the part performance rule as a matter of *evidence*. We hold that these explanations are not relevant. Under Cardozo's classic formulation, the alleged part performance must be "alone and without the aid of words of promise . . . unintelligible or at least extraordinary unless as an incident of ownership." *Burns*, 135 N.E. at 273. The Partnership's perceived need to explain why the acts were undertaken suggests that each act does not, in Cardozo's words, "itself supply the key to what is promised." *Id.*

¶24 The statute of frauds enacts a clear legislative prohibition against enforcement of an oral agreement for the conveyance of land. The requirement that the alleged acts of part performance be unequivocally referable to the alleged contract assures that only in rare circumstances will courts exempt oral agreements from the plain terms of the statute. *See Coleman v. Coleman*, 48 Ariz. 337, 344, 61 P.2d 441, 444 (1936) (stating the statute of frauds "prevent[s] existing estates in land from being upset by parol evidence"). The statutory policy would be severely compromised if the statute of frauds could be avoided whenever a plaintiff claimed that he undertook any act in reliance on an alleged agreement. If such were the case, the part performance exception would virtually swallow the rule.

14

¶25    The Partnership also relies on Restatement (Second) of Contracts § 128(2), which provides:

> A contract by joint tenants or tenants in common to partition land into separate tracts for each tenant is within the Statute of Frauds but becomes enforceable notwithstanding the Statute as to each tract when possession of it is taken in severalty in accordance with the agreement.[4]

The Partnership asserts that § 128(2) is satisfied because the parties took possession of separate tracts of the Parcel in severalty.  In support of that argument, the Partnership claims that after the parties agreed to partition, in addition to removing the trees from Lots 17 and 18, Owens installed fencing and other improvements on these lots, brought horses onto the lots, and regularly trimmed weeds and grass on the two lots, while Thomas Schepp continued to reside on Lot 20.

¶26    In some cases, evidence that tenants in common took exclusive possession of divided portions of a tract can provide compelling evidence that an oral partition agreement exists.  But such is not the case here.  Thomas Schepp resided on Lot 20 for some fourteen years before the alleged partition agreement; his continued residence is thus as consistent with continuation of the status quo as with the alleged agreement.  Similarly,

---

[4]    A similar rule appears in Restatement (First) of Contracts § 196(2).

Owens's alleged acts are consistent with his right to use the Parcel and improve the property as a tenant in common. Nor does the record suggest that any co-tenant was excluded from any portion of the Parcel after the alleged agreement. Therefore, neither party's alleged acts of possession are unequivocally referable to the alleged contract.

### III.

¶27 For the reasons above, the court of appeals erred in concluding that the alleged acts of part performance took the oral partition agreement outside the statute of frauds.[5] The Partnership contends, nonetheless, that the partial summary judgment should be vacated on a ground not addressed by the court of appeals in light of its decision to remand this case for trial. The Partnership argues that the trial court abused its discretion in denying its motion to continue the summary judgment proceedings until it could depose Owens and examine his documents. *See* Ariz. R. Civ. P. 56(f) (providing that the superior court may refuse an application for summary judgment when the opposing party cannot for reasons stated by affidavit present facts essential to the opposition).

---

[5] Given our conclusion that the parties' acts did not take the alleged contract outside the statute of frauds, we need not consider whether, in light of the statutory partition remedy, "injustice can be avoided only by specific enforcement." Restatement of Contracts (Second) § 129. *See* n.2*, supra.*

16

¶28     The superior court did not abuse its discretion in refusing to allow the requested document discovery.  Under § 129, a party seeking equitable enforcement of an oral contract to convey land must show he acted to his detriment in reliance on the alleged agreement.  *See Rentz v. Grant*, 934 So. 2d 368, 372, 374-75 (Ala. 2006).  Only the Partnership's *own* actions, not those of Owens, can show the required detrimental reliance.  The Partnership could not have relied on actions or statements of Owens about which it was unaware.  Further document discovery therefore could not have aided the Partnership in proving part performance.

¶29     The Partnership's request to depose Owens presents a more difficult issue.  An admission under oath by the party opposing enforcement of an oral contract that the contract exists can take the agreement outside of the statute of frauds. *See* 4 *Corbin on Contracts* § 14.2, at 175-80; *see also* Restatement (Second) of Contracts § 129 cmt. d.  The judicial admission exception is a "common-sense recognition that if the defendant admitted in a pleading that he had made a contract with the plaintiff, the purpose of the statute of frauds – protection against fraudulent or otherwise false contractual

17

claims – was fulfilled." *DF Activities Corp. v. Brown*, 851 F.2d 920, 923 (7th Cir. 1988) (Posner, J.).[6]

¶30         Under the facts of this case, the superior court did not abuse its discretion in refusing to continue the summary judgment motion to allow Owens's deposition.  Owens's verified complaint seeking statutory partition asserted, under penalty of perjury, that "[t]he parties have been unable to agree on partition in accordance with their respective interests."  More importantly, Owens specifically denied the existence of the alleged contract in his verified reply to the Partnership's counterclaim, stating under penalty of perjury that he "particularly and specifically" denied "the allegations . . . wherein it is claimed that the parties entered into a 'Partition Agreement.'"  The reply later states, again under penalty of perjury, that "[t]he alleged 'Partition Agreement' referenced in the Counterclaim does not exist."  Thus, the gist of the motion for continuance was the Partnership's hope that Owens would disavow these verified statements in his deposition.

¶31         The United States Court of Appeals for the Seventh Circuit has addressed a virtually identical situation.  In *DF*

---

[6]     For obvious reasons, the exception applies only when the alleged admission occurs during a judicial proceeding.  If the plaintiff's statement that the defendant had admitted to the contract outside of court were allowed to circumvent the statute of frauds, the statute would have no force at all.

18

*Activities*, the plaintiff sought to enforce an oral contract for the sale of goods. 851 F.2d at 921. The defendant moved to dismiss under the statute of frauds and appended to her motion an affidavit denying the existence of any contract. *Id.* The district court granted the motion to dismiss. *Id.* at 922. On appeal, the plaintiff cited Uniform Commercial Code § 2-201(3), which exempts a contract for the sale of goods from the statute of frauds when "the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made," and argued that the trial court had erred by refusing to allow the deposition of the defendant. *Id.* at 922.

¶32     The Seventh Circuit nonetheless affirmed. *Id.* at 924. It noted that further discovery might well be appropriate if there were "a bare motion to dismiss, or an answer, with no evidentiary materials," because under such circumstances "the possibility remains a live one that, if asked under oath whether a contract had been made, the defendant would admit it had been." *Id*. at 922. But when the defendant already has sworn under oath that no contract exists, "a plaintiff in a suit on a contract within the statute of frauds should not be allowed to resist a motion to dismiss . . . by arguing that his luck may improve in discovery." *Id.* at 923. To hold otherwise would

19

"invite the unedifying form of discovery in which the examining lawyer tries to put words in the witness's mouth and construe them as admissions." *Id.* Indeed, if such discovery were required, "the statute of frauds becomes a defense of meager value," *id.*, and its purpose of avoiding litigation over whether a contract exists would be undermined.[7]

¶33 In this case, Owens unequivocally and repeatedly denied under oath that the contract existed. *See* Ariz. R. Civ. P. 80(i) (treating statements made under penalty of perjury as if made under oath). Under these circumstances, the superior court did not abuse its discretion by refusing to allow further discovery on the bare hope that Owens would disavow these statements if deposed.

**IV.**

¶34 Finally, the Partnership argues that, even if statutory partition is warranted, the superior court erred by not instructing the commissioners that they could issue a report awarding Lot 20 to the Partnership and Lots 17 and 18 to Owens, with any disparity in values offset by an equalization payment.

---

[7] The dissenting judge in *DF Activities* agreed that a trial judge would not abuse his discretion in denying further discovery in light of a defendant's express sworn denial of a contract. 851 F.2d at 924-25 (Flaum, J., dissenting). He thought, however, that the defendant's affidavit in that case did not contain a "blanket denial" of the contract's existence. *Id.* at 925.

20

The superior court did not include such an instruction in its order appointing the commissioners, but took no express position on the authority of the commissioners to so recommend. The court of appeals did not address this issue in light of its decision to vacate the order requiring statutory partition.

¶35    The superior court did not err in refusing to give the requested instruction to the commissioners. "[P]artition is a statutory procedure and, absent an agreement between the parties to voluntarily divide the property, any remedy must comply with the statutory scheme." *Cohen v. Frey*, 215 Ariz. 62, 65 ¶ 6, 157 P.3d 482, 485 (App. 2007). Our statutes authorize commissioners to make a report to the court either dividing the subject property equitably, A.R.S. § 12-1216, or, if such a division is not possible, recommending sale of the property, *id.* § 12-1218(A). The statutes do not contemplate that in those cases in which the commissioners conclude that the property cannot be divided equitably, they instead propose an equalization payment. *See* 59A Am. Jur. 2d, *Partition* § 181, at 107 (2d ed. 1987) ("[I]n the absence of a statute, it appears that such power does not reside in the commissioners in a partition proceeding.").

¶36    Because the Partnership argues only that the superior court should have instructed the *commissioners* to arrive at an equalization payment, we need not decide today whether the court

21

itself has such equitable power. We note, however, that when commissioners conclude that an equitable division is not possible, they must report their reasons for so concluding to the superior court. A.R.S. § 12-1218(A). That report will necessarily include their evaluation of the Parcel as a whole and their conclusions as to why the Parcel cannot practically be divided in a manner giving each co-tenant his respective interest. Any party may file objections to such a report and is thereafter entitled to a hearing before the superior court. *Id.* § 12-1219. If the commissioners conclude that an equitable division of the Parcel is impossible, the Partnership can raise its arguments concerning the court's power to order an equalization payment at that time and any decision will be subject to appellate review on a full record.

**V.**

¶37    For the foregoing reasons, we vacate the opinion of the court of appeals and affirm the judgment of the superior court. This case is remanded to the superior court for further proceedings consistent with this opinion.

_____
Andrew D. Hurwitz, Justice

22

CONCURRING:

_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice