NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CFT DEVELOPMENTS, LLC, an Arizona limited liability company,
*Plaintiff/Appellee,*

*v.*

MICHAEL LE and AMY LE, husband and wife, *Defendants/Appellants.*

No. 1 CA-CV 13-0574
FILED 1-6-2015

Appeal from the Superior Court in Maricopa County
No. CV2011-015921
The Honorable Mark H. Brain, Judge

**AFFIRMED**

COUNSEL

Ballard Spahr LLP, Phoenix
By Brian Schulman and Craig C. Hoffman
*Counsel for Plaintiff/Appellee*

Berens Kozub Kloberdanz & Blonstein PLC, Scottsdale
By Daniel L. Kloberdanz
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

---

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**G O U L D**, Judge:

¶1  Michael and Amy Le ("Guarantors") appeal from the trial court's grant of summary judgment in favor of CFT Developments, LLC ("CFT"). For the reasons discussed below, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2  Through a closely held limited liability company, Guarantors own and operate several nail and hair salons in the Phoenix area. In December 2008, two of Guarantors' businesses, "Fab Cuts" and "Amazing Nails and Spa," leased spaces from CFT and signed written leases. Each lease was for a term of five years. Guarantors personally guaranteed the rent payments for both businesses in written guarantees.

¶3  In April 2009, Guarantors informed CFT that the two businesses were struggling financially and, as a result, Guarantors were seeking to reduce the rent payments. The parties eventually signed written amendments to the original leases reducing the rent for both businesses. The terms of the written amendments were retroactive to June 1, 2009, and extended until January 31, 2010.

¶4  Although the written amendments expired at the end of January 2010, Guarantors continued making reduced rent payments after that time. In the spring of 2010, the parties met to discuss the lease payments. Guarantors contend that during this meeting CFT orally agreed to continue the reduced rent agreements. Following the meeting, Guarantors continued to make reduced rent payments for a period of fifteen months; all of these payments were accepted by CFT.

¶5  In April, 2011, CFT notified Guarantors' businesses they were in default for non-payment of the full rent due under the original leases. When Guarantors did not pay on their guarantees, CFT filed a complaint against Guarantors for breach of contract and enforcement of their personal guarantees.

**¶6**        CFT filed a motion for summary judgment, which was granted by the trial court.  Judgment was entered in favor of CFT, and Guarantors timely appealed.

## DISCUSSION

**¶7**        A court "shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  On appeal from a grant of summary judgment, we review the court's determination de novo.  *Badia v. City of Casa Grande*, 195 Ariz. 349, 352, ¶ 11, 988 P.2d 134, 137 (App. 1999).  We view the facts in the light most favorable to the party opposing summary judgment in the trial court.  *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 596, 826 P.2d 1217, 1222 (App. 1991).

**¶8**        The trial court did not resolve whether the parties entered into an oral agreement to extend the reduced rent payments.  Rather, the trial court assumed that even if there was an oral agreement, it was barred by the statute of frauds.  We similarly confine our review to the issue of whether, assuming there was an oral agreement, it was barred by the statute of frauds.

**¶9**        The Arizona statute of frauds states, in relevant part:

> No action shall be brought in any court for the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:
>
> …
>
> Upon an agreement for leasing for a longer period than one year.

Ariz. Rev. Stat. ("A.R.S.") section 44-101(6) (West 2014).

**¶10**        There is no dispute that the original leases fell within the statute of frauds.  A.R.S. § 44-101(6).  As a result, the alleged oral agreements, as material modifications of the underlying leases, must comply with the statute of frauds. *Best v. Edwards*, 217 Ariz. 497, 501-02, ¶¶ 18-19, 176 P.3d 695, 699-700 (App. 2008) (holding that when an original agreement falls within the statute of frauds, any material modification of the original agreement is also subject to the statute of frauds); *see Exec.*

*Towers v. Leonard*, 7 Ariz. App. 331, 332-33, 439 P.2d 303, 304-05 (1968); Restatement (First) of Contracts § 232(2) (1932).

¶11        Guarantors contend, however, that CFT is precluded from asserting the statute of frauds as a defense because they fully performed their obligations under the oral agreement.  In support of this argument, Guarantors correctly note that an oral agreement is "removed from the statute of frauds when one party fully performs" its obligations under the agreement.  *Long v. City of Glendale*, 208 Ariz. 319, 329, ¶ 35, 93 P.3d 519, 529 (App. 2004).

¶12        However, "one cannot claim full performance of a contract, such as a lease, which would be, if performed, concededly executory on both sides."  *Trollope v. Koerner*, 106 Ariz. 10, 17, 470 P.2d 91, 98 (1970); *See Arnold and Assocs., Inc. v. MISYS Healthcare Sys.*, 275 F.Supp. 2d 1013, 1022 (D. Ariz. 2003).  Here, the original leases were executory and could not be fully performed until they expired in 2013.  The written amendments in 2009 and the alleged oral amendments in 2010 solely addressed the amount of rent paid by Guarantors under the original lease; none of these later agreements addressed or altered the term of the original lease.  Indeed, when Guarantors stopped making reduced rent payments in August 2011, approximately two years remained on the terms of the leases.  Guarantors' performance was, therefore, incomplete at the time the alleged oral amendments expired because they had neither possessed the two properties for the full term of the leases nor paid the amount of rents owed for the remainder of the lease terms.

¶13        Guarantors' reliance on *In re MacDonald*, 4 Ariz. App. 94, 417 P.2d 728 (1966), to support their full performance claim is misplaced because the facts of that case are distinguishable from the present case.  The tenant in *MacDonald* sought a set-off against his rent based on an oral agreement with the decedent prior to her death.  *Id.* at 96, 417 P.2d at 730.  The tenant asserted that he and the decedent had orally agreed the tenant would receive a set-off if he made certain improvements to the leased property.  *Id.*  The tenant contended that he had made all of the subject improvements, and therefore fully performed his part of the oral agreement.  *Id.* at 99, 417 P.2d at 733.  Under these circumstances, the court held that because the tenant had "made the expenditures for the benefit of the leased land pursuant to the contract, his part of the 'contract' was fully performed and he was entitled to receive the offset against the rents for the lessor in spite of the fact that the agreement was not evidenced by writing."  *Id.; see Cavanagh v. Kelly,* 80 Ariz. 361, 363-64, 297 P.2d 1102, 1103-04 (1956) (holding that alleged oral contract between purchaser and real estate broker

was removed from the statute of frauds because the real estate broker's oral agreement to accept payment of his commission from the purchaser, thereby enabling purchaser to make requisite down payment to purchase home, was fully performed by the broker when the purchase of the home was completed).

¶14        In contrast to the tenant in *MacDonald*, Guarantors did not complete their performance under the original leases by making the fifteen reduced rent payments. Rather, once Guarantors made the last reduced payments, they remained contractually obligated to make two years of additional rent payments. Accordingly, the alleged oral agreements are not removed from the statute of frauds based on full performance.

¶15        Guarantors also argue that because they partially performed their contractual obligations under the alleged oral agreements, the agreements were not barred by the statute of frauds. Guarantors contend that their payments of reduced rent for fifteen months "unquestionably" show the existence of the oral agreements, and that those payments were made in reliance on the agreements.

¶16        Part performance is a well-established exception to the statute of frauds, and is grounded on the equitable principle of estoppel. *Owens v. M.E. Schepp Ltd. P'ship*, 218 Ariz. 222, 226, ¶ 15, 182 P.3d 664, 668 (2008). Thus, a party seeking to remove an agreement from the statute of frauds based on part performance must show it suffered a detriment, or loss, based on acts "undertaken in reliance on the agreement." *Id.* However, a party may not avoid the statute of frauds simply by claiming he undertook some act in reliance on an alleged agreement. *Id.* at 228, ¶ 24, 182 P.3d at 670. The doctrine of part performance also serves "an important evidentiary function" by excusing "the writing required by the statute [of frauds]" because the relevant acts "provide convincing proof that the contract exists." *Id.* at 226, ¶ 16, 182 P.3d at 668. To this end, "the acts of part performance take an alleged contract outside the statute [of frauds] only if they cannot be explained in the absence of the contract" and are "unequivocally referable" to the alleged contract. *Id.* at 226-27, ¶¶ 16, 18, 182 P.3d at 668-69. Stated another way, "any alleged act of part performance [must] be consistent only with the existence of a contract and inconsistent with other explanations such as ongoing negotiations . . . or an existing relationship between the parties." *Id.* at 227, ¶ 18, 182 P.3d at 669.

¶17        Our review of the record shows that the reduced rent paid by Guarantors is not "unequivocally referable" to the alleged oral agreements. The meeting in the spring of 2010 and Guarantors' subsequent reduced rent

payments may be viewed as part of ongoing negotiations between CFT and Guarantors and good faith efforts by Guarantors to comply with a portion of their lease obligations to avoid eviction. *Id.* Moreover, the reduced rent payments may also be explained in the context of the parties' existing landlord/tenant relationship; Guarantors, due to their financial struggles, were in default and simply could not pay the full amount of rent due under the leases. *Id.* Given these possible alternative explanations, the trial court properly concluded that Guarantors failed to show that their reduced payments were "unequivocally referable" to the alleged oral agreements.

¶18        Guarantors have also failed to show detrimental reliance based on the alleged oral agreements. In seeking to equitably estop CFT from asserting the statute of frauds, Guarantors must show their detrimental reliance was more "than mere loss of the benefit of the alleged agreement." *Best*, 217 Ariz. at 503, ¶ 25, 176 P.3d at 701; *Del Rio Land, Inc. v. Haumont*, 118 Ariz. 1, 7, 574 P.2d 469, 475 (App. 1977); *cf. Cress v. Switzer*, 61 Ariz. 405, 406-07, 411, 150 P.2d 86, 87, 89 (1944) (detrimental reliance shown where plaintiffs spent substantial sums in remodeling the business premises in reliance on an oral agreement); *Diamond v. Jacquith,* 14 Ariz. 119, 125, 125 P. 712, 714 (1912) (detrimental reliance was established, thereby removing a verbal agreement for sales commissions from the statute of frauds, based on the fact plaintiff moved his family to Arizona and refrained from seeking other employment in reliance on the agreement).

¶19        Here, Guarantors have shown nothing more than the loss of the alleged rent reduction under the oral agreements. Guarantors do not contend, for example, that they made any improvements to the properties or lost other business opportunities in reliance on the oral agreements. Accordingly, Guarantors have made an insufficient showing of detrimental reliance. *Best*, 217 Ariz. at 503, ¶ 25, 176 P.3d at 701; *Del Rio*, 118 Ariz. at 7, 574 P.2d at 475.

¶20        Finally, Guarantors appear to argue that the oral agreements may be enforced based on promissory estoppel. We disagree. "In Arizona, the doctrine of promissory estoppel applies to a contract otherwise barred by the Statute of Frauds *only* 'where a promise has been made not to rely on the Statute,' that is, where the party asserting the Statute of Frauds defense has misrepresented that the statute's requirements have been met or promises to put the agreement in writing." *Mullins v. So. Pac. Trans. Co.*, 174 Ariz. 540, 542, 851 P.2d 839, 841 (App. 1992), quoting *Tiffany Inc. v. W.M.K. Transit Mix, Inc.*, 16 Ariz. App. 415, 421, 493 P.2d 1220, 1226 (1972). Thus, "[p]romissory estoppel is applied to defeat the Statute of Frauds only where there is a second promise not to rely on the statute." *Mullins*, 174

Ariz. at 542, 851 P.2d at 841. Here, Guarantors have offered no evidence that CFT made such an oral promise.

**¶21** Because we affirm the trial court's grant of summary judgment in favor of CFT, we do not reach the remaining arguments raised by CFT in their answering brief. *See Helmericks v. AiResearch Mfg. Co. of Ariz.*, 88 Ariz. 413, 416-17, 357 P.2d 152, 154 (1960).

## ATTORNEYS' FEES

**¶22** CFT seeks attorneys' fees pursuant to section 20.13 of the leases. The provision states that the prevailing party in any action or proceeding relating to the enforcement of the leases is entitled to an award of reasonable attorneys' fees. Based on this fee provision, and because CFT has prevailed in this appeal, we grant CFT's request for attorneys' fees. *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 378, ¶ 26, 35 P.3d 426, 432 (App. 2001). CFT is directed to submit an attorneys' fee application and affidavit in compliance with Arizona Rule of Civil Appellate Procedure 21(c) in support of its claim for fees.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm the judgment of the trial court.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama