Gerald Ficke, appellee, v.
Gilbert Wolken, appellant.
___ N.W.2d ___

Filed July 31, 2015.    No. S-13-906.

1. **Specific Performance: Equity: Appeal and Error.** An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court.

2. **Equity: Appeal and Error.** On appeal from an equity action, when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

3. **Appeal and Error.** The Nebraska Supreme Court will not consider errors which are not properly assigned in a petition for further review and discussed in the supporting memorandum brief.

4. **Fraud: Contracts: Title.** An oral agreement for the transfer of title to real estate is voidable under the statute of frauds.

5. **Contracts: Specific Performance: Real Estate: Proof.** A party seeking specific performance of an oral contract for the sale of real estate upon the basis of part performance must prove an oral contract, the terms of which are clear, satisfactory, and unequivocal, and that the acts done in part performance were referable solely to the contract sought to be enforced, and not such as might be referable to some other or different contract, and further that nonperformance by the other party would amount to a fraud upon the party seeking specific performance.

6. **Contracts: Partial Performance: Fraud: Testimony: Intent.** When considering the part performance exception to the statute of frauds, the alleged acts of performance must speak for themselves. Testimony by the plaintiff as to his or her intent in rendering the performance, by itself, is insufficient.

7. **Evidence: Witnesses.** The admissions by a party to an action upon a material matter are admissible against him or her as original evidence.
8. \_\_\_\_: \_\_\_\_. An admission may be made by conduct as well as orally or in writing.
9. \_\_\_\_: \_\_\_\_. As a general rule, any act or conduct on the part of a party which may fairly be interpreted as an admission against interest on a material issue may be shown in evidence against him or her.
10. \_\_\_\_: \_\_\_\_. Where a party on the trial of an action advances contentions which are inconsistent with his or her prior conduct with respect to the matter in controversy, such prior conduct may be shown as being in the nature of an admission.

Petition for further review from the Court of Appeals, INBODY, RIEDMANN, and BISHOP, Judges, on appeal thereto from the District Court for Gage County, PAUL W. KORSLUND, Judge. Judgment of Court of Appeals affirmed.

Lyle J. Koenig, of Koenig Law Firm, for appellant.

Bradley A. Sipp for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

## INTRODUCTION

An employee, relying upon the part performance exception to the statute of frauds, alleged that his former employer breached an oral contract to convey real estate. Gerald Ficke claimed that the employer promised him 80 acres of farmland if he continued his employment for a period of 10 years. The Nebraska Court of Appeals affirmed a decree in Ficke's favor, concluding that he had proved part performance.[1] Although we ultimately agree that Ficke proved part performance, we disapprove of the Court of Appeals' reliance upon Ficke's testimony as to his intent. To prove part performance, the alleged acts of performance must establish the exception without the

---

[1] See *Ficke v. Wolken*, 22 Neb. App. 587, 858 N.W.2d 249 (2014).

aid of such testimony. Because there was other sufficient evidence, we affirm.

## BACKGROUND

In January 2000, Ficke began working for Gilbert Wolken as a "hired hand." Ficke performed cattle work, maintenance, mechanical work, and general farm work. He worked various hours depending on the season, ranging from 40 to 60 hours per week. And he was always "on-call" and expected to fix any issues that might arise, regardless of what he was doing. When Ficke began his employment, he earned $7.50 per hour. But at the time of his employment's termination, his wages had risen to $14.75 per hour. He was also paid overtime and usually received an annual bonus extending from $500 to $2,000.

According to Ficke, Wolken promised him the 80 acres of farmland sometime in 2002 or 2003. At the time of the promise, Ficke and Wolken were driving in Wolken's pickup. Ficke looked down at his shoes and said, "[T]here's the only ground I'll ever own." Wolken responded that he would make Ficke a deal. Wolken told Ficke, "After working ten years . . . for me, I will give you 80 acres." And Wolken indicated that the 80 acres were the first 80 acres that Wolken had ever purchased.

Although Ficke worked for Wolken for approximately 10 years 9 months, Wolken never signed over the 80 acres to Ficke. And Wolken terminated Ficke's employment in September 2010. In March 2011, Ficke filed a complaint against Wolken alleging that Wolken had breached the oral contract.

A bench trial was conducted before the district court, and Ficke testified as to his relationship with Wolken. Ficke indicated that he and Wolken were "[v]ery good friends" and that he considered Wolken to be a "father figure." Ficke described that he and Wolken would participate in various activities that "friends and family do together," such as eating together on birthdays, attending concerts, and celebrating holidays.

As to his reaction to Wolken's promise, Ficke testified that he was overwhelmed and that he "didn't really know how to take it." Ficke told Wolken that he did not have to give Ficke the land, but Wolken insisted. And Ficke indicated that Wolken raised the matter many times. Wolken would mention the promise "every so often" and would remind Ficke, usually in January, that Ficke had only "another year or two years," depending on the year.

And Ficke iterated that Wolken's promise was a significant factor for his continued employment.

> [Ficke's counsel:] During this ten-year, nine-month span of time that you worked for . . . Wolken, did you ever think about quitting?
>
> [Ficke:] Oh, yes.
>
> Q. Why?
>
> A. Well, I worked constantly. I had no family life, insurance. I had no health insurance for, I don't know, five, six years. I just, you know, I always thought, you know, that I could do better, but then in the back of [my] mind, yeah, 80 acres after ten years isn't a bad deal either.
>
> Q. Did you ever decide to stay working for . . . Wolken because of his promise?
>
> [Wolken's counsel:] We will object on the ground that it's leading and suggestive, Your Honor.
>
> THE COURT: Sustained.
>
> [Ficke's counsel:] Well, you testified that you thought about quitting before. Why did you stay with him?
>
> [Ficke:] Well, 80 acres, and farming, that's what I loved. I loved to farm. And after the ten years, a bonus like that is something that a person works for.

According to Ficke, on January 10, 2010, Wolken told him that he had completed the 10 years of employment and that the 80 acres belonged to Ficke. Although Wolken never signed over the 80 acres, Ficke described one instance when Wolken treated the 80 acres as belonging to Ficke. During harvest season, all of the wheat from the 80 acres was

kept separate and Wolken instructed the cooperative to pay Ficke 40 percent of the profit from the wheat. Additionally, before Ficke's employment was terminated, Wolken offered to purchase a house for Ficke in exchange for the 80 acres. Ficke agreed to the proposal, but the purchase offer was not accepted and the deal "fell through." And after Ficke's employment was terminated, Wolken discussed the 80 acres with Ficke and mentioned that he was attempting to determine how he could purchase the 80 acres from Ficke with minimal tax consequences.

The district court also received portions of Wolken's deposition testimony, and Wolken confirmed the existence of the promise. Wolken testified that he promised Ficke "[e]ighty acres of land if [Ficke] fulfilled his job." And Wolken stated that in order to fulfill his job, Ficke was required to "[a]ct like a decent man." Wolken explained that he wanted to give Ficke a "better attitude on the job." But Wolken did not believe that Ficke had fulfilled his obligations.

According to Wolken, Ficke's temper was an issue and Ficke would argue with Wolken's wife and call Wolken names. Wolken testified that Ficke "was dangerous to be around," and he described one instance in which Ficke had intentionally set fire to bales of straw and another in which Ficke had thrown a telephone at the windshield of Wolken's vehicle.

Additionally, the district court received testimony from Wolken's sister. Wolken's sister testified that after Wolken had fired Ficke, Wolken told her that he had promised Ficke the 80 acres and that Ficke had completed the 10-year period.

After trial, the district court entered a decree (styled as an "order") granting Ficke specific performance of the contract. The court determined that Ficke's testimony was "completely credible" and that Ficke would not have fulfilled the 10 years of employment but for Wolken's promise to convey the 80 acres. Thus, the court concluded that the part performance exception to the statute of frauds applied, because "[t]o not enforce performance by Wolken would amount to a fraud upon Ficke."

Wolken filed a timely notice of appeal, and the case was assigned to the Court of Appeals' docket. On appeal, the Court of Appeals determined that Ficke had met his burden of proving the existence of the oral contract and its terms by clear, satisfactory, and unequivocal evidence. As to Ficke's performance of the contract, the Court of Appeals relied upon Ficke's testimony in concluding that his continued employment for the 10-year period was referable solely to the oral contract. It therefore affirmed the granting of specific performance in Ficke's favor.

We granted Wolken's petition for further review.

ASSIGNMENTS OF ERROR

Wolken assigns, restated, that the Court of Appeals erred in (1) concluding that Ficke established by clear, satisfactory, and unequivocal evidence that his continued employment for 10 years was referable solely to the oral contract to convey the 80 acres and (2) applying a subjective, rather than an objective, test to determine whether Ficke had partially performed the oral contract.

STANDARD OF REVIEW

[1] An action for specific performance sounds in equity, and on appeal, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court.[2]

[2] On appeal from an equity action, when credible evidence is in conflict on material issues of fact, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.[3]

---

[2] *Langemeier v. Urwiler Oil & Fertilizer*, 265 Neb. 827, 660 N.W.2d 487 (2003).

[3] *Twin Towers Condo. Assn. v. Bel Fury Invest. Group*, 290 Neb. 329, 860 N.W.2d 147 (2015).

ANALYSIS

[3] In his petition for further review, Wolken does not challenge the Court of Appeals' conclusion that Ficke met his burden of proving the existence and terms of the oral contract by clear, satisfactory, and unequivocal evidence. Although we understood Wolken at oral argument to raise various assertions regarding the existence of the contract and its terms, we will not consider errors which are not properly assigned in a petition for further review and discussed in the supporting memorandum brief.[4] Thus, we restrict our analysis to Wolken's specific assignments of error, both of which address the Court of Appeals' conclusion that Ficke's performance was referable solely to the oral contract.

[4] It is clear that unless some exception applies, Ficke's claim to enforce the promise to convey the 80 acres was barred by the statute of frauds. An oral contract to convey land falls under the statute of frauds.[5] And it is the general rule that an oral agreement for the transfer of title to real estate is voidable under the statute of frauds.[6]

Nebraska's statute of frauds applicable to the sale of an interest in land provides:

> No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same.[7]

---

[4] See *Steele v. Sedlacek*, 261 Neb. 794, 626 N.W.2d 224 (2001).

[5] See Neb. Rev. Stat. §§ 36-103 to 36-105 (Reissue 2008).

[6] *Hackbarth v. Hackbarth*, 146 Neb. 919, 22 N.W.2d 184 (1946).

[7] § 36-103.

Thus, because Ficke did not assert the existence of any document signed by Wolken which could satisfy the statute of frauds, some exception must apply to permit Ficke's claim.

[5] As observed by the Court of Appeals, an exception to the statute of frauds authorizes specific performance of an oral contract in cases of part performance.[8] A party seeking specific performance of an oral contract for the sale of real estate upon the basis of part performance must prove an oral contract, the terms of which are clear, satisfactory, and unequivocal, and that the acts done in part performance were referable solely to the contract sought to be enforced, and not such as might be referable to some other or different contract, and further that nonperformance by the other party would amount to a fraud upon the party seeking specific performance.[9]

The Court of Appeals determined that Ficke had satisfied the part performance exception for two reasons: (1) Ficke continued his employment for the 10-year period and (2) Ficke's testimony indicated that his continued employment was referable solely to the promise of the 80 acres and not to some other contract or relationship.

We first address the Court of Appeals' reliance upon Ficke's testimony as to his intent. In determining that Ficke's continued employment was referable solely to the oral contract, the Court of Appeals cited the portion of Ficke's testimony quoted above—that Ficke had thought about quitting, but that the promise of the 80 acres was "something that a person works for." The Court of Appeals determined that this testimony established the part performance exception, because it proved that the "sole reason [Ficke] continued his employment was to attain the land that was promised."[10]

---

[8] See *American Central City v. Joint Antelope Valley Auth.*, 281 Neb. 742, 807 N.W.2d 170 (2011).

[9] *Id.*

[10] *Ficke, supra* note 1, 22 Neb. App. at 595, 858 N.W.2d at 257.

We disapprove of this reliance upon the above testimony as the sole basis for the part performance exception. The part performance exception entails an onerous burden of proof—a plaintiff must prove not only that the alleged performance is referable to the oral contract, but also that the performance "cannot be accounted for on any other reasonable hypothesis."[11] Multiple courts have recognized that in satisfying this high burden, the alleged acts of performance must speak for themselves.[12] As expressed by the Supreme Court of Connecticut:

> [W]e have found no cases, nor have the plaintiffs pointed us to any, in which testimonial evidence as to intent, rather than actions, was probative evidence of part performance. Indeed, if we were to accept as dispositive testimony that a party would not have undertaken the action "but for" the other party's promise, this limited exception to the statute of frauds would swallow the rule.[13]

Without a focus upon a plaintiff's acts, "the statute of frauds could be avoided whenever a plaintiff claimed that he undertook any act in reliance on an alleged agreement."[14]

[6] This reasoning is consistent with both our prior case law and the purpose of the statute of frauds.[15] We therefore hold that to establish the part performance exception, the alleged acts of performance must speak for themselves. Testimony

---

[11] *Crnkovich v. Crnkovich*, 144 Neb. 904, 907, 15 N.W.2d 66, 68 (1944).

[12] See, *Owens v. M.E. Schepp Ltd. Partnership*, 218 Ariz. 222, 182 P.3d 664 (2008); *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 873 A.2d 929 (2005).

[13] *Glazer, supra* note 12, 274 Conn. at 71, 873 A.2d at 953.

[14] *Owens, supra* note 12, 218 Ariz. at 228, 182 P.3d at 670.

[15] See, *Halsted v. Halsted*, 169 Neb. 325, 329, 99 N.W.2d 384, 387 (1959) (observing that statute of frauds "would be reduced to a mere shell" if party was permitted to await death of other parties and satisfy statute solely by his testimony); *Hackbarth, supra* note 6 (rejecting plaintiff's claim of alleged oral contract to convey personal property under statute of frauds and observing that evidence of such contract consisted solely of plaintiff's testimony).

by the plaintiff as to his or her intent in rendering the performance, by itself, is insufficient.

Having identified the proper framework, we turn to the alleged acts of performance to determine whether they are sufficient to establish the part performance exception. As previously indicated, in this case, the alleged acts of performance constitute Ficke's continued employment for the 10-year period. Wolken contends that Ficke's continued employment was insufficient, because there was no basis to distinguish between Ficke's continued employment under his regular employment contract and his continued employment pursuant to the promise of the 80 acres.

Wolken's argument is premised upon two prior cases in which we found the claimants' continued employment insufficient to prove part performance. In *Theobald v. Agee*,[16] an employer allegedly promised two of his employees that he would leave them an interest in a farm in his will if they remained in his employ. Upon the employer's death, one of the employees filed suit, alleging that he had performed the contract by remaining in his employment until the company had been sold. But we determined that the employee's continued employment "was equally referable to his employment contract with the [c]ompany, under which contract he received payment for his services."[17]

And in *In re Estate of Layton*,[18] an employer allegedly promised an employee that he would execute a will leaving a store and inventory to the employee in return for the employee's service. The employee filed suit and claimed that he had remained at the store, working 10 hours per day, 6 days per week, at what he felt were low wages, because of the employer's promise. Like *Theobald*, we found no basis to distinguish the claimant's performance of his employment contract from his performance of the alleged promise.

---

[16] *Theobald v. Agee*, 202 Neb. 524, 276 N.W.2d 191 (1979).

[17] *Id.* at 533, 276 N.W.2d at 196.

[18] *In re Estate of Layton*, 212 Neb. 518, 323 N.W.2d 817 (1982).

The employee continued to be compensated for his services and received annual raises in his compensation. Further, the employee admitted that he did not agree to do anything more for the employer pursuant to the alleged promise.

However, we find this case distinguishable from *Theobald* and *In re Estate of Layton*. In both those cases, the employer was deceased at the time the employee brought the claim. Thus, a risk for fraud existed upon the employer's estate. We have previously recognized that "'[c]ourts of justice lend a very unwilling ear to statements of what dead men have said.'"[19] "'Unsupported testimony of a single person as to a conversation between himself and a deceased person is regarded as the weakest of all kinds of evidence.'"[20]

But in this case, the propensity for fraud against the employer or the employer's estate was nonexistent. In his deposition testimony, Wolken admitted to promising the 80 acres to Ficke. Thus, rather than fraud against the employer, the possibility for fraud in this case existed only as against Ficke. With respect to the part performance exception, we have stated that the alleged part performance must be "something that the claimant would not have done unless on account of the agreement and with the direct view to its performance— so that nonperformance by the other party would amount to fraud upon him."[21]

We find the evidence received by the district court sufficient to support its conclusion that Ficke would not have continued his employment but for the promise of the 80 acres and that he did so with the 80 acres as his direct view. In doing so, we give weight to the fact that the district court heard Ficke's testimony and found it credible. Ficke testified that he "worked constantly" and was always "on-call," that

---

[19] *Johnson v. Kern*, 117 Neb. 536, 546, 225 N.W. 38, 42 (1929), quoting *Lea v. Polk County Copper Co.*, 62 U.S. (21 How.) 493, 16 L. Ed. 203 (1858).

[20] *Johnson, supra* note 19, 117 Neb. at 546, 225 N.W. at 42, quoting *Lippert v. Pacific Sugar Corporation*, 33 Cal. App. 198, 164 P. 810 (1917).

[21] *Overlander v. Ware*, 102 Neb. 216, 218, 166 N.W. 611, 612 (1918).

he had no family life or health insurance, and that he always believed he "could do better."

Additionally, the district court received evidence of Wolken's own statements and conduct admitting that Ficke had fully performed his obligation and that Ficke was entitled to the 80 acres. Wolken's sister testified that Wolken had told her that Ficke had completed the 10-year period. And Wolken granted Ficke payment for a portion of the wheat harvested from the 80 acres and had attempted to purchase a house for Ficke as a substitute for the 80 acres.

[7-9] Wolken's statement to his sister and his treatment of the 80 acres as belonging to Ficke are critically important as admissions. The admissions by a party to an action upon a material matter are admissible against him or her as original evidence.[22] And an admission may be made by conduct as well as orally or in writing.[23] Thus, as a general rule, any act or conduct on the part of a party which may fairly be interpreted as an admission against interest on a material issue may be shown in evidence against him or her.[24]

[10] By admitting to his sister that Ficke had fully performed and in attempting to substitute the house for the 80 acres, Wolken admitted that Ficke was entitled to the 80 acres. Thus, Wolken effectively admitted that Ficke's performance was referable solely to the oral contract. And Wolken's actions regarding the wheat harvest further demonstrated Wolken's belief that Ficke was the owner of the 80 acres. Wolken's admissions treated the contract as performed and the 80 acres as belonging to Ficke; thus, his contention that Ficke's performance was not referable solely to the contract is inconsistent with his own statements and conduct. Where a party on the trial of an action advances contentions which are inconsistent with his or her prior conduct with respect to the matter in controversy, such prior conduct may

---

[22] *Silvey & Co., Inc. v. Engel*, 204 Neb. 633, 284 N.W.2d 560 (1979).

[23] 32 C.J.S. *Evidence* § 530 (2008).

[24] *Id.*

be shown as being in the nature of an admission.[25] We therefore consider Wolken's statements and conduct as additional evidence that Ficke's performance was referable solely to the contract.

Giving no consideration to Ficke's testimony as to his intent, we find the evidence regarding Ficke's acts—particularly Wolken's admissions by statements and conduct—is sufficient to establish that his continued employment for the 10-year period was referable solely to the oral contract. Thus, although for different reasons from those stated by the Court of Appeals, we agree that Ficke's claim as to the 80 acres was enforceable under the part performance exception to the statute of frauds.

## CONCLUSION

Although Ficke's claim regarding the 80 acres fell directly within the statute of frauds, it was enforceable under the part performance exception. The evidence, particularly Wolken's admissions by statements and by conduct, was sufficient to establish that Ficke's performance of the oral contract was referable solely to the promise of the 80 acres. And our analysis gives no consideration to Ficke's testimony as to his intent. We emphasize that a claimant's testimony as to his or her intent in rendering performance is insufficient to establish the exception. Under the part performance exception, the alleged acts of performance must speak for themselves. We therefore disapprove of the Court of Appeals' reliance upon Ficke's testimony as to his intent. But because there was other sufficient evidence, we affirm the granting of specific performance in Ficke's favor.

AFFIRMED.

STEPHAN, J., not participating.

---

[25] *Id.*